# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

————————————

No 10-CV-1961 (JFB)

————————————

NATHAN POWELL,

Petitioner,

VERSUS

HAROLD GRAHAM,
SUPERINTENDENT OF AUBURN CORRECTIONAL FACILITY,

Respondent.

————————————

**MEMORANDUM AND ORDER**
JANUARY 3, 2013

————————————

JOSEPH F. BIANCO, District Judge:

Nathan Powell ("Powell" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to vacate his conviction entered on August 18, 2003 in the County Court, Nassau County ("County Court"), for manslaughter in the first degree (N.Y. Penal Law § 125.20).

Petitioner seeks to overturn his conviction on four grounds: (1) the County Court judge should have recused himself due to bias against petitioner's attorney; (2) petitioner's plea was involuntary; (3) venue in Nassau County was improper; and (4) the prosecution withheld *Brady* evidence.[1]

Respondent seeks to dismiss the instant petition because an adequate and independent state procedural ground bars petitioner's arguments as to venue and the alleged *Brady* violation that prevented state review of the issues, and further, because all of petitioner's arguments are without merit.

For the reasons set forth below, the Court concludes that all of petitioner's claims are without merit and that there is no basis for habeas relief.

---

[1] Petitioner also raises two additional grounds: (1) New York State's statutes and practices regarding recusal and judicial disqualification do not meet federal constitutional standards; and (2) the procedural bars in C.P.L. § 440.10 should not be applied. (Pet. at 13, 15.)  As set forth *infra*, these claims also fail on the merits.

I. BACKGROUND

A. Underlying Facts

The following facts are adduced from the instant petition and the record below.

1. Pre-trial Hearings

On October 3, 2001, petitioner killed Jawad Wassel ("Wassel") with a pool cue in Queens County; he was subsequently arrested in Nassau County, where he was found with the victim's dismembered body. (County Court Plea Minutes of June 4, 2003 ("Plea Tr.") at 19.)

Petitioner was indicted for two counts of murder in the second degree (N.Y. Penal Law § 125.25(1), (2)) and one count of tampering with physical evidence (N.Y. Penal Law § 215.40(2)). At the pre-trial hearing on August 19, 2002, petitioner's attorney, Thomas F. Liotti ("Liotti"), stated that he sent a letter to the Judicial Conduct Commission concerning the conduct of the presiding judge, Honorable Donald P. DeRiggi, in a number of cases and asked the judge to recuse himself. (County Court Hr'g Mins. of Aug. 19, 2002 ("Aug 19, 2002 Tr.") at 2-3.) The County Court denied the request, noting that the objections were without merit. (*Id.* at 3.)

Later in the hearing, Liotti alleged that one of the members of the audience, Vita Zaher ("Zaher"), verbally threatened to kill petitioner during the recess. (*Id.* at 41.) Liotti requested that the court remove Zaher and, after a brief inquiry, the court did so. (*Id.* at 42-53.) Liotti further asked the court to remove other members of the audience who were associated with Zaher or Wassel and those that were part of the Afghan community; the court denied this request. (*Id.* at 53-56.) Liotti repeatedly requested an adjournment, citing fear for his and his client's safety. (*Id.* at 55, 59.) The court declined this request, but asked the court officers to increase security. (*Id.* at 59-62.)

Shortly after the court denied Liotti's request, one of the court officers noticed that an audience member had a digital tape recorder and had been recording. (*Id.* at 63-64.) The court ordered that the tape be erased. (*Id.* at 65-67.) Liotti objected to the erasure and argued that it be confiscated and examined by the court. (*Id.* at 64-67.) The court denied this request. (*Id.* at 67.)

Although there is no record of a hearing on March 10 or March 17, 2003, petitioner alleges that there was an additional hearing. (Pet'r's Supplemental Br., Appellate Division at 49-54; Pet. at 14.) According to petitioner, at this hearing, the Nassau County District Attorney admitted to speaking with an FBI agent about the case and that the District Attorney refused to turn over the records or the name of the agent. (Pet'r's Supplemental Br., Appellate Division at 49-50, Pet. at 14.)

2. Plea Agreement and Sentencing

On June 4, 2003, petitioner pled guilty to one count of manslaughter in the first degree in full satisfaction of the indictment. (Plea Tr. at 23.) According to his plea allocution, petitioner "killed Jawed Wassel on October 3, 2001 by striking him with a pool cue and stabbing him, intending to cause his death thereby." (*Id.* at 19.) He was then arrested in Nassau County, where he was found with the victim's body. (*Id.*) As demonstrated by the following exchange between petitioner and the court, petitioner waived his rights, including the right to appeal:

> THE COURT: You understand, sir,
> that instead of pleading guilty you

have an absolute right to a jury trial on these charges with the assistance of counsel?

THE DEFENDANT:  Yes.

THE COURT:  You understand that if you choose to go to trial, which of course, we are in the process of doing, you would not have to take the witness stand and testify unless you decided to do so?

THE DEFENDANT:  Yes.

…

THE COURT: Do you understand that by pleading guilty, you are giving up these and other rights?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that a plea of guilty is the same as a conviction after trial?

THE DEFENDANT:  Yes.

THE COURT:  Has anybody threatened you or in any way forced you to plead guilty today?

THE DEFENDANT:  No.

THE COURT:  Are you doing so of your own free will?

THE DEFENDANT:  Yes.

…

THE COURT:  The district attorney has asked that as a condition of this plea you waive your right to appeal. Did you hear that?

THE DEFENDANT:  Yes.

THE COURT:    And have you discussed this with your lawyer and do you understand it?

THE DEFENDANT:  Yes.

THE COURT:  You understand that while you do have a right to appeal, if you waive that right, that means that no higher Court will review what's happening in this case, either with respect to the sentence or any of the steps which have led to your conviction; do you understand?

THE DEFENDANT:  Yes.

…

THE COURT:    I find a knowing, intelligent and voluntary waiver of appellate rights.   Mr. Powell, in addition to waiving your right to appeal, I want to make it clear to you that while this case has transpired there have been various defenses presented to the Court, correct?

THE DEFENDANT:  Yes.

THE COURT:    The defense, specifically, of justification and the affirmative defense of not responsible by reason of defective or diseased mind, correct?

THE DEFENDANT:  Yes.

THE COURT:  Insanity defense.

THE DEFENDANT:  Yes.

THE COURT: So my question to you, sir, and as we've discussed, and you have to understand that you have to specifically waive and withdraw those defenses. Do you understand what I'm saying?

THE DEFENDANT: I understand. …

THE COURT: . . . My sentence will include the following: Restitution as established, mandatory surcharge of $200, a $10 Crime Victim Assistance Fee, and I will sentence you to a determinate sentence of imprisonment of 20 years with a five-year period of post-release supervision. . . . Do you understand everything I said?

THE DEFENDANT: Yes.

(*Id.* at 12-17.) Furthermore, the County Court and petitioner engaged in the following colloquy, in which the County Court conditioned the plea agreement on petitioner being truthful with the Probation Department:

THE COURT: I am further advising you, sir, that as a condition of this plea of the following, that if between now and sentence date you fail to cooperate with Probation or if you give untruthful answers to the questions asked of you by Probation, or if you are validly arrested and charged with a new crime, any commitment which I have given may be withdrawn by me and I may sentence you to the fullest extent of the law, which is 25 years in jail, and you will not be permitted to withdraw your plea of guilty on those grounds and - - withdrawn. Do

you understand what I said?

THE DEFENDANT: You would withdraw?

THE COURT: Excuse me?

THE DEFENDANT: I don't understand, no.

THE COURT: I will repeat it. If, between now and sentence date you fail to cooperate with Probation or if you give untruthful answers to the questions asked of you by Probation, or if you are validly arrested and charged with a new crime, and Probation is going to interview you; do you understand?

THE DEFENDANT: Yes.

THE COURT: And they are going to ask you questions; do you understand that?

THE DEFENDANT: Yes.

THE COURT: They are going to ask you what happened on October 3rd and October 4th; do you understand?

THE DEFENDANT: Yes.

THE COURT: And you just told me under oath what happened, right?

THE DEFENDANT: Yes.

THE COURT: So if you tell them something different, you will not be telling them the truth, correct?

THE DEFENDANT: I understand, yes.

4

THE COURT: So if that happens, or you are validly arrested and charged with a new crime, any commitment that I have given may be withdrawn by me and I may sentence you to fullest extent under the law, which in your case is 25 years in jail, and you will not be permitted to withdraw your plea of guilty on those grounds. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you have any questions, you know, ask your lawyer, now is the time to do it. Do you need any time to discuss anything with him?

THE DEFENDANT: I just have one question.

THE COURT: Go ahead. Counsel and client are conferring.

(Whereupon the defendant and Mr. Liotti confer.).

THE COURT: Okay, counsel and his client have conferred. Any questions?

THE DEFENDANT: No.

THE COURT: Okay. Do you understand everything that's happened here?

THE DEFENDANT: Yes.

(*Id*. at 20-22.) The petitioner then pled guilty and the County Court accepted the plea. (*Id*. at 23.)

On August 4, 2003, at the pre-sentencing hearing, the petitioner, through counsel, stated that he did not commit a crime. (Pre-sentencing Mins. of Aug. 4, 2003 ("Pre-sentencing Tr.") at 18.) Petitioner – again through counsel – further stated that he wanted to go to trial and that Judge DeRiggi's bias against petitioner's attorney and refusal to recuse himself induced petitioner to enter the guilty plea. (*Id.* at 25, 28, 30.) Petitioner's attorney also stated to the County Court that he felt it was imperative to accept the plea, even though "[they] felt that [petitioner] had viable and important defenses that [they] could raise and [they] felt that this was a triable case and one that [they] could possibly win." (*Id.* at 9.) On its own accord, the County Court postponed the sentencing hearing in order to determine whether petitioner had violated the condition of the plea agreement that he be truthful with the Probation Department. (*Id.* at 31.)

At the sentencing on August 18, 2003, the County Court found, without a hearing, that petitioner lied to the Probation Department, violating the conditions of his plea agreement. (Sentencing Mins. of Aug 18, 2003 ("Sentencing Tr.") at 43-44.) The County Court stated that "[t]he fact that [petitioner] pled guilty to me and stated at that time that he intended to kill the [victim] in violation of the law and told probation that it was a justified killing is the basis for me considering giving him an enhanced sentence." (*Id.* at 4.) Consequently, the County Court sentenced petitioner to an enhanced term of twenty-five years. (*Id.* at 43-44.)

It should also be noted that, according to the sentencing transcript, petitioner's counsel had filed a lawsuit against Judge DeRiggi that was served the day the parties were picking a jury in petitioner's case. (*Id.* at 8.) Liotti again made a request for Judge DeRiggi to recuse himself, which was

denied. (*Id*. at 7-9.)

### B. Procedural History

#### 1. Post-Trial Motions

On October 3, 2003, petitioner's attorney filed a motion to vacate petitioner's conviction, pursuant to N.Y. C.P.L. § 440.10, on the grounds that the guilty plea was not entered knowingly, intelligently, or voluntarily and that the court breached the sentencing agreement. The trial court denied the motion on March 31, 2004, finding that the claim was meritless. *People v. Powell*, Motion Cal. C-455, Indictment No. 82N-02 (County Court, Nassau County March 31, 2004). Specifically, the Court ruled, *inter alia*, that the plea was knowing, intelligent, and voluntary, and that no judicial misconduct had taken place. *Id*. Petitioner did not seek leave to appeal.

On or about October 17, 2007, petitioner filed a second motion to vacate his conviction, pursuant to N.Y. C.P.L. § 440.10, on the grounds that his plea was the result of undue psychological pressure exerted by the County Court, that his constitutional rights were violated pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and that he should be allowed to introduce polygraph evidence in his defense. The trial court denied this second motion in its entirety on March 13, 2008, finding that it was procedurally barred by N.Y. C.P.L. § 440.10(3)(c). *People v. Powell*, Motion Cal. C-682, Indictment No. 82N-02 (County Court, Nassau County March 13, 2008). The court explained that the petitioner could not raise new grounds in a second Section 440.10 motion when they could have been raised on appeal. *Id*. The court denied petitioner's request for leave to appeal on July 24, 2008.

#### 2. Direct Appeals and Resentencing

Petitioner applied to the Appellate Division, Second Department ("Appellate Division") for leave to appeal the August 18, 2003 conviction on the following grounds: (1) Judge DeRiggi should have recused himself due to bias against petitioner's attorney; (2) Judge DeRiggi erred in denying a hearing in his decision to enhance petitioner's sentence; (3) Judge DeRiggi violated the terms of the plea agreement; (4) Judge Deriggi erred in enhancing the sentence based upon defendant's alleged inconsistent statements; and (5) venue in Nassau County was improper. (Appellant's Br. at 8, 12, 16, 20, 24.) In petitioner's *pro se* supplemental brief, Powell restated his initial claims and added that: (1) his plea was not knowingly, intelligently, or voluntarily entered; (2) New York's venue statute was unconstitutional; (3) New York's recusal statute was unconstitutional; (4) there was a *Brady* violation; and (5) the sentence was excessive. (Appellant's Supplemental Br., Appellate Division at 6-8.)

The Appellate Division granted petitioner leave to appeal, and on October 7, 2008, it modified the judgment. *People v. Powell*, 55 A.D.3d 632 (2d Dept. 2008). The Appellate Division found that the County Court's inquiry was insufficient for it to have concluded that petitioner breached the condition of the plea agreement, the latter of which required him to be truthful with the probation department. *Id*. at 634. Accordingly, the Second Department vacated the sentence and remanded the case to the County Court for a hearing and determination as to whether petitioner had, in fact, violated the condition of his plea agreement. *Id.* at 634-35. Regarding petitioner's recusal challenge, the Second Department found that the judge's refusal to

recuse himself was not improper. *Id.* at 633. It further found that the waiver of petitioner's right to appeal was valid and precluded petitioner's challenge to jurisdiction in Nassau County, the admissibility of polygraph evidence, and the constitutionality of New York's venue and recusal statutes. *Id.* at 635. It also found all of petitioner's other arguments to be meritless. *Id.*

On November 19, 2008, petitioner, his counsel, and the prosecutor all agreed that petitioner should be sentenced to the term of imprisonment originally promised under the plea agreement, and the County Court reinstated the original sentence of twenty years. (Resentencing Mins. of Nov. 19, 2008 ("Resentencing Tr.") at 10.) Accordingly, because the originally agreed upon term of twenty years' imprisonment was imposed, the need for a hearing to determine whether petitioner had violated the condition of his plea agreement was obviated. (*Id.* at 5.) [2]

---

[2] According to respondent, after the resentencing petitioner filed a notice of appeal to the Appellate Division. (Resp't's Mem. of L. at 9, n.1.) Respondent states that on or about May 7, 2010, petitioner's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (*Id.*) According to respondent, as of about June 8, 2010, petitioner had not filed a supplemental brief. (*Id.*) Petitioner does not make any reference to this appeal in his petition, and the Court was not provided with the brief referenced by respondent. However, since that time, the Court, in its own independent research, has discovered that on November 23, 2010, the Second Department affirmed the County Court's decision resentencing petitioner and stated that upon a review of the record, it "agree[d] with the defendant's assigned counsel that there are no nonfrivolous issues which could be raised on appeal." *People v. Powell*, 78 A.D.3d 1080 (2d Dept. 2010.) The Second Department further stated that "[t]he defendant has not, nor could he have, raised any nonfrivolous issues in his supplemental pro se brief." *Id.* It is unclear whether or not petitioner sought leave to appeal the Second Department's decision to the Court of Appeals.

On October 30, 2008, petitioner applied to the Court of Appeals *pro se* for leave to appeal the Appellate Division's October 7, 2008 decision. The Court of Appeals denied petitioner leave to appeal on January 23, 2009. *People v. Powell*, 874 N.Y.S.2d 14 (N.Y. 2009).

### 3. Instant Petition

On April 19, 2010, *pro se* petitioner filed the instant habeas petition. Respondent filed his response on June 8, 2010. Petitioner filed a reply on June 28, 2010. The Court has fully considered the submissions and arguments of the parties.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standards of review provided in 28 U.S.C. § 2254, as amended by AEDPA, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (alteration in original).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)) (alteration in original). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not

required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

Petitioner argues that he is entitled to habeas relief on four grounds: (1) Judge DeRiggi should have recused himself because he was biased against petitioner's attorney; (2) petitioner's plea was not knowing, intelligent, or voluntary; (3) venue in Nassau County was improper; and (4) the prosecution withheld *Brady* evidence.[3]

Respondent first contends that petitioner's arguments concerning venue and the alleged *Brady* violation are barred by an adequate and independent state procedural ground that prevented state review of the issues. Further, respondent contends that all of petitioner's remaining claims are without merit. For the reasons set forth below, the Court agrees that the claims regarding venue and *Brady* are procedurally barred. In an abundance of caution, however, the Court has analyzed the merits of all of petitioner's claims and concludes that they are without merit.

## A. Effect of Petitioner's Guilty Plea

Given petitioner's guilty plea to the charge of manslaughter in the first degree (which the Court finds, for reasons discussed *infra*, to be knowingly, intelligently, and voluntarily entered), any

---

[3] As stated *supra*, petitioner also raises two additional grounds: (1) New York State's statutes and practices regarding recusal and judicial disqualification do not meet federal constitutional standards; and (2) the procedural bars in C.P.L. § 440.10 should not be applied here. (Pet. at 13, 15.)

defect in the state court proceedings cannot serve as grounds for habeas relief. *See Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").

In sum, all of petitioner's claims, with the exception of his challenge to the validity of his guilty plea (which the Court concludes, as discussed *infra*, was voluntary, knowing, and intelligent) and possibly his *Brady* claim,[4] are precluded from review because of petitioner's guilty plea. *See Crispino v. Allard*, 378 F. Supp. 2d 393, 414 (S.D.N.Y. 2005) ("[I]f [petitioner] entered a voluntary, knowing, and intelligent guilty plea, any and all non-jurisdictional defects raised in the indictment are waived.").

However, even if petitioner's claims were not precluded by his guilty plea, his claims for improper venue, recusal, and *Brady* violations would still be procedurally barred for the following reasons.

B. Procedural Bar

1. Legal Standard

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). To be independent, the "state court must actually have relied on the procedural bar as an

independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)) (internal quotation mark omitted), by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar," *id.* at 263 (quoting *Caldwell*, 472 U.S. at 327). The procedural rule at issue is adequate if it is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). However, there is a "small category," *Lee v. Kemna*, 534 U.S. 362, 381 (2002), of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question," *id.* at 376. Nevertheless, "principles of comity . . . counsel that a federal court that deems a state procedural rule inadequate should not reach that conclusion 'lightly or without clear support in state law.'" *Garcia*, 188 F.3d at 77 (quoting *Meadows v. Holland*, 831 F.2d 493, 497 (4th Cir. 1987) (en banc)).

If a claim is procedurally barred, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *See Coleman*, 501 U.S. at 750. Petitioner may demonstrate cause by showing one of the following: "(1) the factual or legal basis for a petitioner's claim was not reasonably available to counsel, (2) some interference by state officials made compliance with the procedural rule impracticable, or (3) the procedural default was the result of ineffective assistance of counsel." *McLeod v. Graham*, No. 10 Civ. 3778 (BMC), 2010 WL 5125317, at *3 (E.D.N.Y. Dec. 9, 2010)

---

[4] Courts disagree on whether a *Brady* claim survives a valid guilty plea. *See, e.g., Hill v. West*, 599 F. Supp. 2d 371, 388 n.3 (W.D.N.Y. 2009) (collecting cases). However, the Court need not decide this issue because his *Brady* claim fails in any event, both procedurally and on the merits, for the reasons discussed *infra*.

(citing *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994)). Prejudice can be demonstrated by showing that the error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome procedural default based on a miscarriage of justice, petitioner must demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

## 2. Application

On direct appeal, the Appellate Division held that petitioner's waiver of appellate review when he pled guilty precluded review of geographical venue and the constitutionality of New York's venue and recusal statutes. *People v. Powell*, 55 A.D.3d at 635. Therefore, because petitioner's claim of improper venue was procedurally barred by an independent and adequate state procedural ground, it is procedurally barred from review for habeas relief. *See Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Moreover, petitioner has not demonstrated cause for his default, prejudice resulting therefrom, or that a failure to consider his

claim will result in a miscarriage of justice. *Id.* at 749-50.

Further, petitioner's *Brady* claim was also found to be procedurally barred by the County Court. *People v. Powell*, Motion Cal. C-682, Indictment No. 82N-02. In his motion to vacate the judgment, petitioner asserted that his plea was coerced and that his constitutional rights were violated under *Brady*. The County Court stated that all of "the grounds that the defendant now asserts as the basis for vacatur of his judgment are procedurally barred pursuant to C.P.L. §440.10(3)(c), and *People v. Skinner*, 154 AD2d 216, 221." *Id.* Consequently, petitioner's *Brady* claim is also procedurally barred by an independent and adequate state procedural ground. Petitioner cannot overcome this default because he has not shown cause, prejudice, or a fundamental miscarriage of justice.[5]

---

[5] To the extent petitioner indirectly questions the legal validity of Section 440.10, the Court rejects any such challenge. The Appellate Division's reliance on the procedural bars were not exorbitant in this case. The Supreme Court concluded that in a limited category of "exceptional cases," the state appellate court has applied a firmly established and regularly followed procedural ground in an "exorbitant" manner, so that the application of the ground was inadequate, and federal courts were therefore not barred from reviewing such a claim on the merits in a habeas appeal. *Lee*, 534 U.S. at 376, 381. The Court has considered the factors set forth in *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003), in connection with this exception. That is,

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state [case law] indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial; and, therefore, whether demanding perfect compliance with the rule

However, in an abundance of caution, the Court has analyzed the merits of all of petitioner's claims. It concludes that none of the claims provide a basis for granting habeas relief in this case.

## C. Review on the Merits

The Court has considered all of petitioner's claims on the merits. For the reasons set forth below, the Court concludes that petitioner has failed to demonstrate any basis for habeas relief.

## 1. Judge DeRiggi's Alleged Bias and Failure to Recuse Himself

Petitioner argues that Judge DeRiggi was biased against petitioner and that his conduct deprived petitioner of his constitutional rights to due process and a fair trial. The Court has reviewed this claim in its entirety and finds it to be meritless.

Under federal habeas review, a petitioner faces a high hurdle in demonstrating that he was constitutionally deprived of a fair trial because of biased treatment by a state trial judge. Although "prejudicial intervention by a trial judge could so fundamentally impair the fairness of a criminal trial as to violate the Due Process Clause," *Daye v. Att'y Gen.*

---

would serve a legitimate governmental interest.

*Id.* (internal quotation marks omitted). The Court concludes that the Appellate Division did not apply the procedural bar in an exorbitant manner. In short, there is no constitutional infirmity with respect to Section 440.10, and no factual or legal basis to prevent its application in this case. *See, e.g., Bryant v. Lempke*, No. 08-cv-6103 (CJS)(VEB), 2009 WL 3188934, at *1 (W.D.N.Y. Sept. 30, 2009) ("To the extent that Bryant claims, in his C.P.L. § 440.10 motion and *coram nobis* application, that C.P.L. §§ 440.10(2)(a), 440.10(2)(c), and 440.30 are unconstitutional, the Court denies leave to include these claims as amendment would be futile.").

*of N.Y.*, 712 F.2d 1566, 1570 (2d Cir. 1983), "a federal [habeas] court will not lightly intervene when such a claim is asserted." *Gayle v. Scully*, 779 F.2d 802, 806 (2d Cir. 1985). The "trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." *Daye*, 712 F.2d at 1572. When making such an assessment, both the quantity and significance of the statements ought to be weighed. *Id.* (referring to the "quantity and nature of a trial judge's questioning").

The Second Circuit has acknowledged that the standard for determining when exactly a state judge engages in impermissible intervention is "'somewhat ill-defined.'" *Gayle*, 779 F.2d at 806 (quoting *Johnson v. Scully*, 727 F.2d 222, 226 (2d Cir. 1984)). However, case law addressing review of judicial intervention claims in federal criminal trials provides useful guidance here. In reviewing a federal judge's conduct, the Second Circuit has made clear that the judge's behavior must be "so prejudicial that it denied . . . [petitioner] a fair, as distinguished from a perfect, trial." *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980). The issue is not one of "whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid." *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985). "The test is whether the jury was so impressed with the judge's partiality to the prosecution that it became a factor in determining the defendant's guilt, . . . or whether 'it appear[ed] clear to the jury that the court believe[d] the accused is guilty.'" *United States v. Amiel*, 95 F.3d 135, 146 (2d Cir. 1996) (quoting *United*

*States v. Nazzaro*, 472 F.2d 302, 303 (2d Cir. 1973)) (alterations in original).

The Second Department and the Nassau County Court have already decided this issue on the merits and determined that there was no support for a claim of judicial misconduct. *See People v. Powell*, 55 A.D.3d at 633; *People v. Powell*, Motion Cal. C-455, Indictment No. 82N-02 (County Court, Nassau County Mar. 31, 2004). Therefore, AEDPA deference applies. Stated differently, this Court must defer to the state court's decision unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Petitioner asserts that Judge DeRiggi's prior relationship with Liotti indicates a bias against petitioner, the latter of which violates petitioner's due process rights. Petitioner points to pending litigation between Judge DeRiggi and Liotti as evidence of bias against Liotti. However, that litigation was unrelated to petitioner's matter. (*See* Resp't's Mem. of L. at 12-13, n.2.) This Court agrees with the numerous other courts that have concluded that there is no federal law that requires automatic recusal when there is pending litigation between the presiding judge and a party because such a rule would allow a pending litigant to "judge shop" simply by filing a lawsuit against the presiding judge. *See In re Bush*, 232 Fed. App'x 852, 854 (11th Cir. 2007) ("A judge is not disqualified merely because a litigant sues or threatens to sue him." (quoting *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977)) (internal quotation marks omitted); *Ronwin v. State*

*Bar of Ariz.*, 686 F.2d 692, 701 (9th Cir. 1982) ("A judge is not disqualified merely because a litigant sues or threatens to sue him. Such an easy method for obtaining disqualification should not be encouraged or allowed." (internal citations and quotation marks omitted)). The court's observation in *Ronwin* is particularly applicable here, where Mr. Liotti's lawsuit was filed on the day of jury selection for petitioner's case. (Sentencing Tr. at 8.)

Even if Judge DeRiggi were biased against petitioner's attorney, this would be insufficient for purposes of establishing judicial bias. Even under federal law, "courts have consistently held that to require recusal, judicial bias must be against a *party*, not the party's counsel." *United States v. Helmsley*, 760 F. Supp. 338, 344 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1522 (2d Cir. 1992).

Petitioner further claims that "where the animosity [between the judge and the attorney] is so virulent that this bias extends to the party itself, causing direct judicial harm, then this conduct . . . merits corrective action by a [f]ederal [c]ourt." (Pet. at 6.) The record indicates that Judge DeRiggi's conduct and behavior was in fact professional and appropriate. Petitioner points to various rulings throughout the hearing as evidence of harm, including the judge's refusal to adjourn after an alleged death threat, refusal to recuse himself, and refusal to eject audience members because of their alleged Afghani descent. (Pet. at 7-9.) However, unfavorable rulings against a party cannot themselves form a "[v]alid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Further, as mentioned *supra*, the judge took Liotti's claims of a death threat as credible, removed the individual who allegedly made the death threat, and agreed to increase security. (Pre-sentencing Tr. at 41-62.)

In sum, petitioner has failed to demonstrate any judicial misconduct or bias by Judge DeRiggi.[6] As a result, this Court finds that the judicial misconduct claim is meritless. Habeas relief on this ground is accordingly denied.

### 2. Validity of Plea

Petitioner argues that his guilty plea was not entered knowingly, intelligently, or voluntarily. Having reviewed this claim in its entirety, the Court finds that it is without merit.

The well-established standard for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The Supreme Court has held that, under the Due Process Clause, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran*, 509 U.S.

389, 400 (1993). Normally, a guilty plea may not be collaterally attacked because it constitutes an admission as to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the ground that it was not made knowingly and voluntarily. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction that is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

The Court rejects petitioner's argument that his guilty plea was not knowing, voluntary, and intelligent. To begin with, the Appellate Division found petitioner's argument that his plea was not knowing, voluntary, and intelligent to be meritless. *Powell*, 55 A.D.3d at 635. In addition, in its denial of petitioner's first section 440.10 motion, the County Court found that "the defendant entered his plea freely, voluntarily and intelligently and his claim that such plea should be vacated is without merit." *People v. Powell*, Motion Cal. C-455, Indictment No. 82N-02, at 3. Therefore, AEDPA deference applies.

Here, petitioner essentially argues that his guilty plea was involuntary because he was afraid that, due to Judge DeRiggi's alleged bias, he would be unable to obtain a fair trial. However, before petitioner entered his guilty plea, the following exchange took place in which petitioner stated that he was not being forced to plead guilty, and he acknowledged that he was waiving his right to a jury trial, right to testify, right to appeal, and various defenses to the crime:

> THE COURT: You understand, sir, that instead of pleading guilty you have an absolute right to a jury trial

---

[6] To the extent petitioner also claims that Section 14 of the New York Judiciary Law is unconstitutional, that argument is patently without merit. As the Supreme Court has explained, "most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (internal citations omitted). Here, petitioner has failed to point to any constitutional defect in the recusal provisions of New York Judiciary Law.

on these charges with the assistance of counsel?

THE DEFENDANT: Yes.

THE COURT: You understand that if you choose to go to trial, which of course, we are in the process of doing, you would not have to take the witness stand and testify unless you decided to do so?

THE DEFENDANT: Yes.

…

THE COURT: Do you understand that by pleading guilty, you are giving up these and other rights?

THE DEFENDANT: Yes.

THE COURT: Do you understand that a plea of guilty is the same as a conviction after trial?

THE DEFENDANT: Yes.

THE COURT: Has anybody threatened you or in any way forced you to plead guilty today?

THE DEFENDANT: No.

THE COURT: Are you doing so of your own free will?

THE DEFENDANT: Yes.

…

THE COURT: The district attorney has asked that as a condition of this plea you waive your right to appeal. Did you hear that?

THE DEFENDANT: Yes.

THE COURT: And have you discussed this with your lawyer and do you understand it?

THE DEFENDANT: Yes.

THE COURT: You understand that while you do have a right to appeal, if you waive that right, that means that no higher Court will review what's happening in this case, either with respect to the sentence or any of the steps which have led to your conviction; do you understand?

THE DEFENDANT: Yes.

…

THE COURT: I find a knowing, intelligent and voluntary waiver of appellate rights. Mr. Powell, in addition to waiving your right to appeal, I want to make it clear to you that while this case has transpired there have been various defenses presented to the Court, correct?

THE DEFENDANT: Yes.

THE COURT: The defense, specifically, of justification and the affirmative defense of not responsible by reason of defective or diseased mind, Correct?

THE DEFENDANT: Yes.

THE COURT: Insanity defense.

THE DEFENDANT: Yes.

THE COURT: So my question to you, sir, and as we've discussed, and

you have to understand that you have to specifically waive and withdraw those defenses.  Do you understand what I'm saying?

    THE DEFENDANT:  I understand.

(*Id.* at 12-16.)  Petitioner then explained that he "killed Jawed Wassel on October 3, 2001 by striking him with a pool cue and stabbing him, intending to causes his death thereby." (*Id.* at 19.)  The County Court found that petitioner understood the nature and consequences of the plea and that he was accepting the plea voluntarily. (*Id.* at 22-23.)  Accordingly, based on the record, it is clear that petitioner's plea was entered knowingly, voluntarily, and intelligently.

    Petitioner further argues that he never agreed to the condition that petitioner cooperate with and be truthful to the Probation Department. At the hearing on June 4, 2003, the following exchange took place between petitioner and the County Court:

    THE COURT: I am further advising you, sir, that as a condition of this plea of the following, that if between now and sentence date you fail to cooperate with Probation or if you give untruthful answers to the questions asked of you by Probation, or if you are validly arrested and charged with a new crime, any commitment which I have given may be withdrawn by me and I may sentence you to the fullest extent of the law, which is 25 years in jail, and you will not be permitted to withdraw your plea of guilty on those grounds and - - withdrawn. Do you understand what I said?

    THE DEFENDANT: You would withdraw?

    THE COURT: Excuse me?

    THE DEFENDANT: I don't understand, no.

    THE COURT: I will repeat it.  If, between now and sentence date you fail to cooperate with Probation or if you give untruthful answers to the questions asked of you by Probation, or if you are validly arrested and charged with a new crime, and Probation is going to interview you; do you understand?

    THE DEFENDANT: Yes.

    THE COURT: And they are going to ask you questions; do you understand that?

    THE DEFENDANT: Yes.

    THE COURT: They are going to ask you what happened on October 3rd and October 4th; do you understand?

    THE DEFENDANT: Yes.

    THE COURT: And you just told me under oath what happened, right?

    THE DEFENDANT: Yes.

    THE COURT: So if you tell them something different, you will not be telling them the truth, correct?

    THE DEFENDANT: I understand, yes.

    THE COURT: So if that happens, or you are validly arrested and charged with a new crime, any commitment

that I have given may be withdrawn by me and I may sentence you to fullest extent under the law, which in your case is 25 years in jail, and you will not be permitted to withdraw your plea of guilty on those grounds. Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you have any questions, you know, ask your lawyer, now is the time to do it. Do you need any time to discuss anything with him?

THE DEFENDANT: I just have one question.

THE COURT: Go ahead. Counsel and client are conferring.

(Whereupon the defendant and Mr. Liotti confer.).

THE COURT: Okay, counsel and his client have conferred. Any questions?

THE DEFENDANT: No.

THE COURT: Okay. Do you understand everything that's happened here?

THE DEFENDANT: Yes.

(*Id*. at 20-22.) Accordingly, after an examination of the record, this Court finds that the County Court went through a detailed explanation of the requirement that petitioner be truthful with the Probation Department. Furthermore, petitioner stated that he understood this condition and the consequences of violating it.

In short, the Court concludes that petitioner has not demonstrated that the state court's decision as to the validity of his guilty plea was contrary to, or an unreasonable application of, clearly established federal law, nor has petitioner demonstrated that the decisions were an unreasonable determination of the facts in light of the evidence presented in the state court proceedings – namely, petitioner's extensive plea colloquy with the court. Thus, the Court rejects petitioner's claim that his guilty plea was not knowing, voluntary, and intelligent.

### 3. Improper Venue

Petitioner argues that the geographical jurisdiction of Nassau County, as opposed to Queens County, pursuant to C.P.L. § 20.40(2)(b) is unconstitutional and violates his equal protection rights. The Court concludes that this claim does not provide a basis for habeas relief.

As a threshold matter, improper venue is not a valid claim for habeas relief because "[t]he application - or misapplication - of state subject matter jurisdiction rules raises no constitutional issues, due process or otherwise." *United States v. Kerley*, 416 F.3d 176, 182 (2d Cir. 2005). Where there is no constitutional issue, there is no basis for federal habeas relief. *See United States ex rel. Roche v. Scully*, 739 F.2d 739, 741 (2d Cir. 1984).

Here, the statute provides, in relevant part, that a homicide may be prosecuted in any county in which "the victim's body or a part thereof was found," even if the homicide did not occur in that county. N.Y. C.P.L. § 20.40(2)(b). There is nothing in such a provision that violates federal constitutional law. At his guilty plea, petitioner stated that he was arrested in

Nassau County with the body of the victim. (Plea Tr. at 19.) Accordingly, venue was proper in Nassau County.

In sum, petitioner has not shown that habeas relief is warranted based on improper venue.

4. Non-Disclosure of *Brady* Material

Petitioner argues that the prosecution's alleged failure to disclose the name of an FBI agent and a related investigation constitutes a *Brady* violation. On careful consideration, the Court disagrees.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material evidence merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Furthermore, "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a

different verdict." *Strickler*, 527 U.S. at 281.

With respect to a plea agreement, "the Constitution does not require the prosecutor to share all useful information with the defendant" prior to the entry of the plea. *Ruiz*, 536 U.S. at 629 (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)). The Supreme Court held that "due process considerations, the very considerations that led this Court to find trial-related rights to exculpatory and impeachment information in *Brady* and *Giglio* [*v. United States*, 405 U.S. 150 (1972)], argue against the existence of" any requirement to disclose impeachment evidence prior to the entry of a plea agreement. *Id.* at 631.

Finally, where the prosecution does not have control over, possession of, or relationship to any of the records, the failure to produce the records does not constitute a *Brady* violation. *See People v. Santorelli*, 95 N.Y.2d 412, 422 (2000); *see also Morgan v. Salamack*, 735 F.2d 354, 358 (2d Cir. 1984) ("'Clearly the government cannot be required to produce that which it does not control and it never possessed or inspected.'" (quoting *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975))).

Petitioner would have to show that the prosecution possessed FBI records and that the production of those records would have changed the outcome of the trial. Here, petitioner has failed to establish either of these facts. First, petitioner acknowledges that records of any FBI investigation were not in the prosecution's control. (Pet'r's Supplemental Br., Appellate Division at 52.) Thus, no *Brady* violation exists. *See, e.g., Bell v. Napoli*, No. 08 Civ. 9900(PGG)(MHD), 2010 WL 8039333, at *22 (S.D.N.Y. Aug. 24, 2010) ("Petitioner has also failed to establish the second element of the *Strickler* test for *Brady*

violations, because he has not shown that either the police or the prosecution had a copy of the surveillance footage in their possession.").

Further, there is no evidence that any alleged communications between the Nassau County District Attorney's Office and the FBI agent were exculpatory or otherwise constituted *Brady* material. In other words, assuming that this information did in fact exist, petitioner has not demonstrated that this information was material to either guilt or punishment. The alleged information apparently relates to whether the victim concealed something that motivated alleged death threats targeting the petitioner. (Pet'r's Reply at 9). This information is not exculpatory in any sense, as there is no indication that it related to his factual guilt. In short, there is no evidence that any *Brady* material existed.

Even if the Court accepts the alleged exculpatory nature of this information, it still would not provide a basis for habeas relief here. With respect to a guilty plea, the prosecution is not required to disclose impeachment material prior to the entry of the plea. *Ruiz*, 536 U.S. at 633. Moreover, the Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea. Therefore, a state court decision on that issue could not have been "contrary to clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A habeas petition may not be granted on an issue of law that has not yet been resolved. *See Friedman v. Rehal*, 618 F.3d 142, 154-55 (2d Cir. 2010) (discussing *Ruiz* and holding that, because no clearly established federal law has been established as to the application of *Brady* to a guilty plea, such a claim was not cognizable on habeas review).

In sum, because petitioner is unable to identify *Brady* material or show that a *Brady* violation occurred, the Court finds no ground for granting habeas relief.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  January 3, 2013
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*.  Respondent is represented by Judith R. Sternberg, Assistant District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501.